**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAPITAL CITY CAB SERVICE, INC.,** | : | |
| **and AYAL SALAME,** | : | **Civil Action No. 1:06-CV-671** |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SUSQUEHANNA AREA REGIONAL** | : | |
| **AIRPORT AUTHORITY, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court are Defendant SARAA's motion in limine to exclude evidence of

Plaintiffs' claims for lost profits and income at trial (Doc. No. 74) and Plaintiff Capital City

Cab's motion to allow testimony of authenticating witness (Doc. No. 76). Because the two

motions are interrelated, each is discussed in this memorandum.

## BACKGROUND

For purposes of these motions, the pertinent background is a procedural one. On March

31, 2006, Plaintiff Ayal Salame filed a complaint in this Court alleging that Defendants

Susquehanna Area Regional Airport Authority ("SARAA"), Randy Hicks, and Alfred Testa

violated his and his company's ("Capital City Cab Service, Inc.") Fourteenth Amendment rights.

Plaintiffs allege that Defendants awarded an exclusive license to operate in the queue line at the

Harrisburg International Airport to the only caucasian-owned cab company in the area, to the

effective exclusion of minority-run cab companies. (Doc. No. 36.)

As early as June 6, 2006, Defendants sought sanctions against Plaintiffs for perceived

failure to comply with the Federal Rules of Civil Procedure. (Doc. No. 8.) However, such motion

was deemed withdrawn for itself failing to comply with the Local Rules of Civil Procedure.

(Doc. No. 10.) After two amended complaints by Plaintiffs (Doc. Nos. 9, 36), Defendants

submitted an answer (Doc. No. 39), and discovery disputes were referred to Magistrate Judge

Smyser. (Doc. No. 45.)

Consistent with Middle District practice, two discovery conferences were conducted in

October of 2007 to address discovery disputes brought to the Court's attention.  As a result of

these conferences with Magistrate Judge Smyser, Plaintiffs agreed to provide Defendants with

copies of all witness statements and with information pertaining to lost profits and taxes. (Doc.

No. 51, at 1.) An order stating Magistrate Judge Smyser's instructions from the October 22, 2007

conference, which was not docketed until February 8, 2008, provided that if disclosures relating

to lost profits and damages were not made before November 8, 2007, Plaintiffs would be

precluded from introducing such evidence at trial. (Doc. No. 51, at 2.) Plaintiffs failed to comply

with that order, but were nonetheless given an additional two weeks to disclose more documents

because of the delay in docketing the order. (Doc. No. 54.) Plaintiffs submitted certain

documents pertinent to Defendants' discovery request on February 14, 2008 (Doc. No. 55), but

none of the documents further explained or supported the balance sheets on which Plaintiffs

relied to prove damages. In response, Defendants filed another motion for sanctions on March

12, 2008 (Doc. No. 57), claiming that Plaintiffs' submissions were incomplete. On April 14,

2008, Magistrate Judge Smyser granted Defendants' motion for sanctions, stating:

> 1) The plaintiffs at trial may not introduce or rely upon witness
> statements not provided to Defendants on or before November 8,
> 2007.
>
> 2) The plaintiffs during trial shall not be permitted to present any
> claim for lost profits or lost income, except to the extent that the
> plaintiffs are able to establish that the 'balance sheets' produced to
> the defendants are admissible under the Federal Rules of Evidence
> to support an inference of lost profits or lost income.

(Doc. No. 62, at 2.) Plaintiffs did not object to the order, but Defendants filed a motion for clarification or reconsideration. (Doc. No. 64.) Magistrate Judge Smyser allowed for the depositions of up to seven more of Plaintiffs' witnesses, to be completed no later than June 30, 2008. (Doc. No. 70.)

Having never received explanatory information or authenticating witnesses to support the balance sheets provided, Defendants now move to exclude all evidence at trial pertaining to Plaintiffs' claim for loss profits and damages. (Doc. No. 74.)  Plaintiffs counter with a motion to permit testimony at trial of their bookkeeper, Robert Crist, to authenticate the balance sheets. (Doc. No. 76.)

**DISCUSSION**

Defendants argue that Plaintiffs should be precluded from admitting testimony regarding damages and lost profits because they failed to produce sufficient information during discovery, despite court orders to do so, that would have allowed the Defendants to properly verify or refute Plaintiffs' claim of damages. Defendants also argue that without supplemental evidence or testimony, the balance sheets that were turned over to them cannot be admitted under the Federal Rules of Evidence.

Plaintiffs argue, both by separate motion and in response to Defendants' motion in limine, that because the imposition of the exclusionary sanctions would "kill the case," the proper remedy is to allow the deposition and testimony of their bookkeeper, Robert Crist, to authenticate the balance sheets. Plaintiffs admit they have repeatedly failed to turn over supporting documents or to name a witness to speak to the damages claim, but they argue that their failure should be excused because Crist, the only person capable of authenticating the

balance sheets, was unavailable due to personal health and financial problems until now "at the 11th hour." Of course, the exclusion of evidence relating to compensatory damages would preclude a monetary recovery for Plaintiffs, a severe outcome of which the Court is mindful as it proceeds through the analysis.

### 1. Admissibility of Balance Sheets Without Authenticating Testimony

First, the Court must determine whether the balance sheets are independently admissible. If so, as per Judge Smyser's order and the fact the documents were turned over to Defendants properly during the discovery period, Crist's testimony is unnecessary.

Federal Rule of Evidence 901 provides, as a matter of conditional relevance, that documents are authenticated if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994). A document may be either self-authenticating or it may be authenticated by a witness laying the proper foundation for such evidence. See, e.g., Fed. R. Evid. 901(b), 902. The "burden of proof for authentication is slight," and may be satisfied by the distinctive characteristics of the document itself, if they suggest an official appearance. United States v. Reilly, 33 F.3d 1396, 1404 (3d Cir. 1994) (internal citations omitted); see also Fed. R. Evid. 901(b); Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 927-28 (3d Cir. 1986) (finding sufficient authentication based on distinctive characteristics of the documents, including company logos, trademarks, the professional appearance of handbooks and manuals, and internal document consistency). However, even if properly authenticated, documents must still satisfy all hearsay requirements to be admissible. Fed. R. Evid. 901, commentary.

As Defendants' brief shows, until this point, Plaintiffs had not given the name of any

witness who could verify or authenticate the balance sheets. Even Plaintiff Salame, when asked in deposition how the $786,926 damages figure was arrived at, conceded that he had no personal knowledge of the financial documents. (Doc. No. 74, Ex. P, at 57-58.) He further disclaimed any knowledge of such figures: "That's the accounting department that did that [created the balance sheets]." (Id. at 57.)

Plaintiffs admit that the balance sheets are not official business documents, but rather were prepared specifically for this litigation. They also admit that they have not provided any receipts or log books from the individual cab drivers to support the contention that the figures on the balance sheets are what they are claimed to be. Further, Plaintiffs provided no evidence to support their suppositions that the average monthly income from a cab equals the amount that would have been lost from a cab working at the airport.[1] Therefore, the Court finds that the documents are not sufficiently distinct or official to be self-authenticated, and there is no support that the documents are "what they are claimed to be."

Additionally, Plaintiffs' statements at oral argument all but concede that the balance sheets are inadmissible hearsay. Crist is now available, thereby removing any suggestion that the balance sheets could be admitted under the hearsay exception for witnesses unavailable due to then existing physical or mental illness. Fed. R. Evid. 804(4) ("Unavailability as a witness includes situations in which the declarant . . . is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity.") The balance sheets

---

[1]Plaintiffs, in their only explanation of their compensatory damages assessment, state that they arrived at the $786,926 figure by taking the average monthly income per cab over the entire fleet, multiplying it by twenty-five, the number of cabs they say worked at the airport, and then multiplying that figure by the thirty-three months at issue. (Doc. No. 74, Ex. D, at 91.)

were also expressly prepared for litigation, thus removing the possibility that they could be admitted under the hearsay exception for records created during the course of regularly conducted business activities. Fed. R. Evid. 803(6) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . A memorandum, report, record, or data compilation . . . if kept in the course of a regularly conducted business activity.")

In summary, it is clear that Crist's testimony is integral to Plaintiffs' claim for damages because the balance sheets are inadmissible without it. The Court now turns to the admissibility of this testimony for the sole purpose of authentication of the financial documents.

### 2. Whether Exclusion is an Appropriate Remedy for Violation of a Discovery Order

Federal Rule of Civil Procedure 37 states that "if a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders . . . [including] prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). Magistrate Judge Smyser made such an order, stating that Plaintiffs "shall not be permitted to present any claim for lost profits or lost income, except to the extent that the plaintiffs are able to establish that the 'balance sheets' produced to the defendants are admissible." (Doc. No. 62, at 2.) Plaintiffs' counsel admits that he failed to comply with Magistrate Judge Smyser's order due to a tactical decision that the balance sheets would be admissible at trial and that supporting documents and testimony would be unnecessary. Given the blatant violation of the order and also the severity of exclusion as it relates to this case, the Court now turns to whether the exclusion of all evidence relating to damages and lost profits is "just," and therefore an appropriate sanction.

The Third Circuit has stated on numerous occasions that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Quinn v. Consol. Freightways Corp. of Delaware, 283 F.3d 572 (3d Cir. 2002) (quoting Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904 (3d Cir. 1977)). In addition, the Court must consider four factors in determining whether to exclude testimony for failure to comply with a discovery order: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." Nicholas v. Pennsylvania State Univ., 227 F.3d 133 (3d Cir. 2000). The importance of the excluded testimony should be taken into consideration, as well. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (citing Meyers, 559 F.2d at 904-05). Finally, because Plaintiffs argue that exclusion of Crist's testimony in this case would be tantamount to dismissal of their claim, the Court is also informed by Poulis v. State Farm Fire & Cas. Co., which suggests that when extreme sanctions are at issue, it is also appropriate to consider the extent to which the actual Plaintiffs contributed to the dilatoriness of their counsel and the meritoriousness of their claim. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). With the above guidelines in mind, the Court concludes that Plaintiffs' conduct in this litigation is so egregious that the exclusion of Crist's testimony and evidence relating to lost profits and damages is the most appropriate remedy.

First, the failure to respond to numerous court orders demonstrates bad faith on the part

of Plaintiffs. Plaintiffs knew Crist prepared the balance sheets; they knew that the cab receipts and log sheets requested by Defendants were available and had been used by Crist to prepare the damages calculations, yet they purposefully chose not to release any of that information to Defendants in direct contravention of multiple court directives. Plaintiffs' counsel made a tactical decision that the balance sheets were sufficient to support his clients' damages claim at trial, but this error in judgment does not excuse Plaintiffs' counsel from compliance with court orders. Plaintiffs had several opportunities to object to the Magistrate Judge's order or directions to provide the name of a witness or more documentation, which they chose not to do. Agreeing to provide Defendants with more documentation but repeatedly failing to do so can only be described as flagrant disregard for the rules of this court.

Mindful of the Poulis factors, the Court also notes that Plaintiff Salame was aware of his counsel's derelict actions. Not only had two conferences been held in which Plaintiffs' counsel agreed to provide Defendants with requested discovery materials, but a court order issued explicitly agreeing that Plaintiffs agreed to support their claim for lost profits "including, but not limited to, balances sheets for years 2000 through the present, receipt books, invoices and all other documents supportive of any summary provided by the plaintiffs and relied upon to calculate income information." (Doc. No. 51, at 2.) It was further brought to Plaintiff Salame's attention during his deposition that adequate material to determine damages and lost profits had not been delivered to Defendants. Plaintiff Salame examined a list of documents given to Defendants and was asked whether all the information Crist would have relied upon to create the balance sheets was on that list *i.e.* whether that information was given to Defendants during discovery. He determined that it was not. (Doc. No. 74, Ex. P, at 148-152.) ("So I'm going to ask

8

you again, do you see any backup documentation in Salame Exhibit 1 [the exhaustive list of documents provided to Defendants] that would allow me to verify the numbers contained on the Capital City Cab Service's income from taxi document?" "No, they can be provided.") Plaintiff Salame was made aware that necessary information had not been provided to Defendants, but he did not take steps to correct the problem. Thus, the failure to comply with Magistrate Judge Smyser's orders constitutes bad faith which can be imputed to both Plaintiffs and their counsel.

Next, the Court notes that the importance of Crist's testimony weighs in favor of allowing the testimony. Without Crist's testimony to authenticate and to explain the balance sheets and damages calculations, all evidence relating to such damages is inadmissible. See infra part 1. However, the Court disagrees with Plaintiffs' assertion that such a result would "kill the case." Plaintiffs' claim is one alleging discrimination and seeking not only damages, but also the opportunity to return to service at the Harrisburg International Airport. A win on the merits of the case at trial, even without a damages award, would not be useless; it would vindicate Plaintiffs' right to be treated equally regardless of religion and ethnicity; it might also allow Plaintiffs the opportunity to recommence service at the airport.

Looking at the next factor, the Court finds that there is prejudice to Defendants in this "11th hour" introduction of new testimony. Such prejudice cannot completely be cured by allowing ample time to conduct Crist's deposition and an order requiring Plaintiffs to provide all documents relied upon by Crist to make the damages calculations. As of one month before trial, Defendants had no suggestion that Crist would be available as a witness; at the time of writing this opinion, one week before trial, Defendants have not had a meaningful opportunity to depose Crist or to begin to investigate the possibly hundreds of documents they requested in support of

Plaintiffs' damages calculation. Even by limiting Crist's testimony to the claim for damages,

Defendants would likely need to re-frame their core argument or trial strategy, which heretofore

had relied on the order by this Court stating that Plaintiffs would be prohibited from presenting

any evidence and calling any witnesses they had not already disclosed.

Because granting Plaintiffs' motion would necessarily delay trial in order that Defendants

may adequately prepare the additional evidence and testimony, a disruption in the orderly trial

process also weighs against admitting the testimony. This trial was initially set for over a year

ago—July 9, 2007. (Doc. No. 23.) Since then, trial dates have already been reset twice. Most

recently, a *date certain* was requested for trial, and granted for the twelfth of this month.

Plaintiffs concede that their motion comes as a crutch now at the "11th hour," and defend this

disruption only on the basis that they are willing to postpone trial to allow Defendants ample

time to depose Crist and to conduct investigation into any new documents they are ordered to

provide. Even in light of the Third Circuit's emphasis on the attainment of justice over an

inflexible efficiency, Plaintiffs' counsel's flagrant disregard of the Court's orders and an orderly

trial process weigh in favor of excluding the testimony. See McMullen v. Bay Ship Management,

335 F.3d 215, 219 (3d Cir. 2003) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).

After weighing all the factors, the Court finds that precluding Plaintiffs from presenting

any evidence at trial relating to damages or lost profits would be a just and fair remedy. The

flagrant disregard for court orders alone is no small matter. But also, Plaintiffs' dilatory strategy

has resulted in protracted litigation, wasted court resources, and possible unjust enrichment to

Plaintiffs.  Defendants have suffered harm as a result of Plaintiffs' conduct: they have expended

resources preparing three times for conferences or hearings on the necessity to provide more

documentation relating to damages, they have likely needed to conceive of and prepare an alternative trial strategy in these recent days based upon the possible last minute introduction of an authenticating witness, and they have become potentially responsible for more compensatory damages with each day this litigation drags on. For these reasons, and in consideration of all the factors listed above, the Court finds that exclusion of the testimony is the most appropriate remedy both to serve justice in this case and deterrence of future similar conduct.

**CONCLUSION**

For the reasons mentioned above, the Court denies Plaintiffs' motion to allow testimony (Doc. No. 76), and grants Defendants' motion in limine (Doc. No. 74). Such a finding does not preclude Plaintiffs from having their day in Court and potentially receiving judgment in their favor, thus trial remains set for November 12, 2008.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**CAPITAL CITY CAB SERVICE, INC.,**           **:**

11

| | | |
|---|---|---|
| and AYAL SALAME, | : | Civil Action No. 1:06-CV-671 |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| SUSQUEHANNA AREA REGIONAL | : | |
| AIRPORT AUTHORITY, <u>et al.</u>, | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW** on this 5th day of November 2008, upon consideration of Defendants'

motion in limine (Doc. No. 74) and Plaintiffs' motion to allow testimony (Doc. No. 76), **IT IS**

**HEREBY ORDERED** that:

    1. Defendants' motion in limine is **GRANTED.**

    2. Plaintiffs' motion to allow testimony is **DENIED.**

    3. Trial remains set for November 12, 2008, at 9:30 a.m. in Courtroom No. 4.

  S/ Yvette Kane           
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
